[S. F. No. 15216. In Bank.—May 27, 1935.]

THE ISLAIS COMPANY, LTD. (a Corporation), Petitioner, v. DUNCAN MATHESON, as Treasurer, etc., Respondent.

658

Leo J. McEnerney and McEnerney, Morris, Gillen & McEnerney for Petitioner.

Athearn, Chandler & Farmer and Milton T. Farmer, as *Amici Curiae* on Behalf of Petitioner.

John J. O'Toole, City Attorney, Henry Heidelberg, Assistant City Attorney, Allen G. Wright, and Wright, Wright & Larson for Respondent.

Orrick, Palmer & Dahlquist, as *Amici Curiae* on Behalf of Respondent.

SHENK, J.—Application for writ of mandate to compel the respondent to accept a certain sum of money in full payment of an assessment levied for reclamation purposes. Six other applications involving assessments on other tracts have been filed by the petitioner. There are no disputed questions of fact.

The petitioner is the owner of several tracts of land within the Islais Creek Reclamation District. On June 29, 1928, the district caused an assessment to be levied on all the lands in the district for reclamation purposes, in the sum of $1,620,150. Thereafter the property owners in the district voted for the issuance of bonds in the amount of the assessment. These bonds were issued and sold on June 30, 1930, pursuant to the provisions of section 3480 of the Political Code, as amended in 1927. In order to meet the payments for principal and interest on the bonds maturing January 1, 1934, respondent Treasurer of the City and County of San Francisco, who is *ex officio* treasurer of the district, made a call for an instalment of the assessment. By its terms the instalment became payable within thirty days from October 1, 1933, and if not paid became delinquent October 31, 1933. None of the instalments on the seven tracts owned by the petitioner was paid and thereafter, on December 7, 1933, said tracts were sold by the respondent to the Treasurer of the City and County of San Francisco and his successors, as trustees of the district, for the amount of the call with accrued interest thereon at seven per cent to the date of sale, together with a penalty of twenty per cent computed on both the amount of the call and interest to the date of sale. The present proceeding involves the sale of tract No. 787. The sale and the computations pursuant to which this tract was sold were in accordance with the provisions of section 3480 of the Political Code as amended in 1927 (Stats. 1927, p. 1449), in force when the bonds were issued and sold.

In 1931, section 3480 of the Political Code was amended. (Stats. 1931, p. 754.) By the amendment it was provided that in case of called assessments becoming delinquent, the moneys owing after the delinquency should be only the

amount of the instalment with a penalty thereon of ten per cent, and the interest rate from the date of sale to the date of redemption was reduced from twelve to seven per cent. The amendment also provided in express terms that it should "apply to all sales for delinquencies, and the proceedings had in connection therewith, on all assessments heretofore or hereafter to be levied". In 1933 the legislature again amended said section 3480. (Stats. 1933, p. 1211.) The amendment of 1931 with reference to the reduction of the amount of the penalty and the interest on all assessments was reenacted or carried into the 1933 amendment.

The petitioner, in seeking to redeem from the delinquency of the instalments, tendered to the treasurer of the district the amount of the call plus a penalty of ten per cent thereon, in conformity with the provisions of the amendments, and made a demand upon the treasurer to accept the sum in full payment of the amount of the delinquent taxes. The tender was refused and these proceedings followed. The petitioner is relying upon the effectiveness of the changes made to section 3480 of the Political Code, as above referred to, to support its tender. The respondent seeks to justify his refusal of the tender upon the ground that the provisions of the amendment to said section 3480 in 1931 and as reenacted in the amendment of 1933, decreasing the penalty on reclamation calls, eliminating interest from the date of delinquency to the date of sale and decreasing the rate of interest required to be paid on redemption, are violative of section 10 of article I of the Constitution of the United States, and section 16 of article I of the Constitution of California, forbidding the impairment of the obligation of contracts, since said amendments, it is claimed, materially alter the contract existing between the district and its bondholders. This argument is based upon the premise that at the time of the levy of the assessment and the issuance, sale and delivery of the bonds, the 1927 amendment to section 3480 of the Political Code was in force. This amendment, as above stated, fixed the delinquency penalty at twenty per cent, and the interest rate after delinquency and prior to sale, and also the interest rate on redemption, at twelve per cent. As then amended the section also provided that all moneys collected upon any assessment, including all interest

and penalties, should be credited to the bond fund and be used exclusively for the payment of the principal and interest of the bonds issued on the assessment. Notwithstanding the existence of these various provisions of section 3480 when the bonds were issued and sold, it is the petitioner's claim that the provisions of the statute in reference to the imposition of penalties conferred no vested interest or contractual right, and in so far as the amendments affect the remedy formerly provided by section 3480, the reduction in the amount of the penalties was made by a law validly passed; that the imposition or collection of penalties for delinquency is not a part of the obligation between the district and the bondholders even though the penalties become part of the bond fund, and the amendments result in no impairment within the meaning of the constitutional provisions relied on.

As between the state and its duly authorized taxing agencies, on the one hand, and the taxed property owner on the other, no question is raised or passed upon as to the power of the legislature, by a retroactive statute, to relax the penalties for nonpayment of the tax or to eliminate the interest from the date of delinquency to the date of sale, or to decrease the rate of interest required for redemption. But when the contract rights of third parties such as bondholders are adversely affected by the attempted retroactive statute, a different rule is applied. The obligations of the contract are determined by the law in effect at the time the contract was made. (*W. B. Worthen Co.* v. *Kavanaugh,* 295 U. S. 56 [55 Sup. Ct. 555, 79 L. Ed. 1298, 97 A. L. R. 905], decided April 1, 1935; *Meyerfeld* v. *South San Joaquin Irr. Dist., ante,* p. 409 [45 Pac. (2d) 321] ; *Hershey* v. *Cole,* 130 Cal. App. 683 [20 Pac. (2d) 972].) When the bonds involved herein were authorized, issued and sold, the statute fixed the penalties and the rate of interest after delinquency and for redemption and set apart the sums so to be charged and collected exclusively for payment of principal and interest on said bonds. This fund then became a part of the security for the payment of the bonds. The contract rate of penalty and interest must therefore be held to persist as against an attempted retroactive statute materially affecting the fund, unless the reduction may be justified under established principles of law. The fact asserted in the respond-

ent's behalf that the reduction in the fund caused by the statute is a substantial sum appears beyond question.

The petitioner contends that the retroactive feature of the amendments of 1931 and 1933 are justifiable as a proper exercise of the police power. The argument is based mainly on the language of the urgency clause attached to the 1933 amending statute and the decision of the Supreme Court of the United States in *Home Building & Loan Assn.* v. *Blaisdell*, 290 U. S. 398 [54 Sup. Ct. 231, 78 L. Ed. 413, 88 A. L. R. 1481].

Section 7 of the amending statute of 1933 provided that the act should take effect immediately. In section 8 the act was declared to be an urgency measure. The statement of facts constituting the urgency relates in large part to the necessity of immediate effect in order that reclamation districts avail themselves at once of the provisions of the act in refunding bond proceedings not here involved. The statement claimed to be applicable to the outstanding bonds here involved is as follows: "Many reclamation districts organized under the laws of this state have issued bonds for the purpose of acquiring works for the reclamation of the lands within such district, which bonds mature in whole or in part on July 1, 1933. If this amendment does not go into effect until ninety days after the final adjournment of this session of the legislature such districts will be unable to take advantage of the provisions hereof prior to July 1, 1933." It may be assumed that this urgency clause was sufficient to put the statute into immediate effect. But that was unnecessary in so far as the changes in the statute here challenged were concerned, for such changes were in effect by the 1931 amendment without an urgency clause. As to said changes the 1933 statute was a mere continuation of the 1931 law.

Again, the changes in the law, as enacted in 1931, did not purport to be made in the exercise of the police power and the argument in support of the proposition that the urgency clause in the 1933 statute made the act a police measure is unavailing, for the further reason that said clause utterly failed to measure up to the requirements of a police measure as outlined in the Blaisdell case. It did not purport to limit the statute to landowners who were in financial distress; it provided no means for the application of equitable principles, was unlimited as to time, and stands as a

permanent state policy. There was, therefore, no need for an urgency clause in the 1933 statute in order to put the challenged changes into effect, for they had already been in effect for nearly two years and under a statute which contained no urgency clause nor indicated otherwise that it was attempted to be passed in the exercise of the police power.

Many authorities are cited to us in support of the petitioner's contention that the primary purpose of imposing penalties for nonpayment of a tax is to induce property owners to pay promptly; that a penalty is a coercive measure, punitive in nature, to induce prompt payment of the tax and not imposed for raising revenue. As establishing the general rule these authorities may not be questioned, but there we have penalties and interest which it is made the duty of the respondent to collect and when collected are made a part of a fund specifically set apart by the statute authorizing the issue of the bonds and are to be used exclusively for the payment of the principal and interest on the bonds. In this respect section 3480 in 1927 pledged the statutory penalties and interest as security for the payment of the bonded indebtedness of the district. The district must be deemed to have authorized and sold the bonds upon the tender of this security to prospective purchasers and the latter to have acquired the same on the faith thereof. To authorize the remission of such penalties and interest, in whole or in substantial part, would be a breach of faith with those who had advanced the money to the district in reliance on such security. They may not thus be deprived of their security. (*Brown-Crummer Inv. Co.* v. *Paulter,* 70 Fed. (2d) 184.) This conclusion is reached with due recognition of the general rule with respect to the remission, reduction and relaxation of penalties and interest incident to delinquencies under ordinary *ad valorem* taxing statutes. (*State* v. *Butts,* 111 Fla. 630 [149 So. 746, 89 A. L. R. 946]; *Jones* v. *Williams,* 121 Tex. 94 [45 S. W. (2d) 130, 79 A. L. R. 983]), and where by statute the penalties and interest are not a part of the tax. (*Long Beach City School Dist.* v. *Payne,* 219 Cal. 598 [28 Pac. (2d) 663].)

The respondent calls attention to and relies upon as conclusive of the matter, the recent case of *W. B. Worthem Co.* v. *Kavanaugh,* above cited, wherein the Supreme Court of

the United States, Mr. Justice Cardozo being the author of the opinion, held invalid as against the owners of outstanding bonds of the district certain statutes of Arkansas extending the period of redemption of property sold for nonpayment of the assessment levied to discharge the bond obligations, reducing the penalty from twenty per cent to three per cent, reducing the interest on redemption from ten or twenty per cent to six per cent, permitting the landowner, instead of the purchasers as theretofore, to remain in possession during the extended period of redemption without accountability for rents, and relaxing in some other particulars and in favor of the property owner the law in effect at the time the bonds were issued. The court stated: ''To know the obligation of a contract we look to the law in force at its making'', and held that the challenged statutes were in violation of the contract clause of the federal Constitution, and that the decision in the Blaisdell case had no application to the controversy.

The petitioner herein insists that the cited Worthem case is not determinative of the present proceeding for the reason that the reductions in penalties and interest in the Arkansas statutes were but two of the many objectionable features of the law and that the court had stated that ''whether one or more of the changes effected by these statutes would be reasonable and valid if separate from the others, there is no occasion to consider''. However, in cataloging the objectionable features of the statutes as the ''outermost limits only'', the court was at pains to point out that ''we do not exclude the possibility that the bounds are even narrower''.

It is true that the statute here under attack does not contain all of the objectionable features of the Arkansas enactments, but our statute does contain two of the denounced features, viz., the reduction in penalties and in interest required for redemption, and in addition eliminates all interest from the date of delinquency to the date of sale. We are convinced that it may not be said in reason that the changes in section 3480 in 1931 and 1933, are so unsubstantial as not materially to affect the constitutional rights of the owners of the outstanding bonds of the district.

The petitioner further contends that the amendments of 1931 and 1933 may be sustained as remedial enact-

ments. Assuming that they have characteristics of remedial legislation, they cannot be given effect as such when their operation would, as here, materially cut down the security specifically pledged by statute for the payment of the bonded indebtedness and thus impair a substantial right. The Worthem case is also decisive of this point against the petitioner.

The conclusion is that the effect of the amendments of 1931 and 1933 come within the reasoning and rule of the Worthem case above cited; that said amendments cannot be justified as police power measures; that the penalties and interest attempted to be reduced and eliminated are an integral part of the fund specifically constituted by law as security for the payment of outstanding bonds; that such changes cannot be sustained on the theory of remedial legislation; that they can have no retrospective operation, and that they do not relieve the respondent from his duty to proceed in accordance with the law in force at the time the district bonds were issued. A kindred phase of the effect of similar attempted retroactive legislation with reference to reclamation district bonds is found in a recent well-considered decision by the District Court of Appeal of the Third District, in an opinion written by Mr. Justice Plummer. (*River Farms Co.* v. *Gibson,* 4 Cal. App. (2d) 731 [42 Pac. (2d) 95].)

The peremptory writ is denied.

Thompson, J., Curtis, J., and Waste, C. J., concurred.

PRESTON, J., Dissenting.—I dissent.

I am unable to see that the bondholders, under the facts before us, are in anywise injured. On the contrary, to permit the landowner to redeem his property from the sale strengthens instead of weakens the security for the bonds. That the land in the hands of an owner is subject to future calls for future payments of bond interest and principal, seems not to be realized. If, as here, there has been no purchaser at the sale and as a consequence the lands are conveyed to the respondent as trustee and not redeemed, then the full title to the lands vests in the district and is never again assessed but may be sold and the net proceeds paid into the bond fund. In such case, however, the bondholder

can get the net value of the property, and no more. No interest item or penalty is present and if the land is not worth the assessment, the bondholder loses. But if the owner is permitted to redeem, the full title of the property becomes liable for future payments of assessment calls and, with the present assessment paid, the likelihood of collecting the next instalments is greatly enhanced. Meanwhile the bondholder has received his full complement of principal and interest. He should, therefore, gladly embrace the opportunity to have the land redeemed as provided in the amended statutes. Of course, if a purchaser is found who will pay the full penalties and interest, to the extent of such penalties the bond fund is increased and the security strengthened. But here we have no purchaser. If the owner does not redeem, there are no penalties or interest for the bond fund. It requires no prophet to predict that in this time of shrinkage in values many of these tracts of land would not sell for the amount of the full assessment. Redemption from an instalment sale without penalties would strengthen the bondholders' position. I think the impairment, if any, of the obligation of the contract is so slight that it should be treated as negligible. The object of the statute was to secure prompt payment of the calls as made, and not to create a new and additional security for the bond issue. Money received on delinquencies had to be disposed of and the bond fund was the very place to lodge it. How the bondholders are expected to profit in the long run by delinquencies, I cannot discern.

Rehearing denied.

Seawell, J., and Preston, J., voted for a rehearing.