[Civ. No. 11847. First Dist., Div. Two. Nov. 24, 1941.]

A. L. ABRAMS et al., Appellants, v. CITY AND COUNTY OF SAN FRANCISCO (a Municipal Corporation), Respondent.

Joseph A. Brown and A. E. Cross for Appellants.

John J. O'Toole, City Attorney, and Walter A. Dold, Chief Deputy City Attorney, for Respondent.

SPENCE, J.—This is an appeal from a judgment in favor of defendant in an action brought to recover alleged excess taxes collected by defendant for the fiscal year 1933–1934.

The action was originally filed in the municipal court and the complaint was in 736 counts representing the claims of 736 plaintiffs. A judgment was entered in favor of defendant in said municipal court but, on appeal to the appellate department of the superior court, it was held the municipal court was without jurisdiction and the cause was ordered transferred to the superior court for trial. Upon the trial in the superior court, judgment was entered for defendant and from said judgment, plaintiffs prosecute this appeal.

The learned trial judge filed an opinion in the trial court, which opinion has been brought up with the record on this appeal. Said opinion correctly sets forth the facts and we are of the view that it properly disposes of all the questions discussed therein. We therefore adopt a portion of that opinion as a portion of the opinion on this appeal. The portion so adopted reads as follows:

"In the year 1933–34 plaintiffs were the owners of certain personal property, but owned no real property at all in this city and county. Consequently such property was taxed for that year at the rate in effect for the previous year, which was $3.96 per $100 assessed valuation. The legality of the collection at the time it was made is admitted. Subsequently the tax rate for 1933–4 was fixed and established at $3.48. It is plaintiffs' contention that the city and county must refund the difference between the amount collected under the 1932–1933 rate of $3.96 and the amount that would have been collected under the rate ultimately fixed for 1933–4, of $3.48. This contention is based on secs. 3823 and 3824, Political Code, the pertinent parts of which read as follows:

"'Sec. 3823—'In the enforcement of the provisions of sec-

tion 3820 of this code, the assessor shall be governed, as to the amount of taxes to be collected by him on property mentioned in said section, by . . . the county rate . . . for the locality in which such property is taxable for the previous year. . . . '

"Sec. 3824—'When the rate is fixed for the year in which such collection is made, then, if a sum in excess of the rate has been collected, such excess shall not be apportioned to the state, but the whole thereof shall remain in the county treasury, and must be repaid by the county treasurer to the person from whom the collection was made. . . . '

"Both sections were enacted in 1872, and were amended for the last time in 1921.

"In answer to this contention the defendant relies upon sec. 9a of art. XIII of the Constitution of California, which read when adopted in 1924 and continued to read until amended in 1936, as follows:

" 'The taxes levied upon personal property for any current tax year where the same is not secured by real estate shall be based upon the tax rate levied upon real property for the preceding tax year. Nothing in this section shall be construed to prohibit the equalization each year of the assessment on personal property in the manner now or hereafter provided by law.'

"It is defendants' claim, in other words, that the adoption of this constitutional provision superseded the said Political Code sections that were unquestionably theretofore applicable. Whether it did, or not, is the sole question presented for decision.

"Up to 1924, when the constitutional amendment was adopted, all property real and personal within the county was taxed at the same rate, which was fixed by the board of supervisors some time between July 1st, when the fiscal year began, and September 1st. (Sec. 3714, Political Code.) In general, property taxes were collected after the rate was fixed. But in the case of *personal property taxes unsecured by real property*, the assessor was authorized to collect such taxes on the first Monday of March, which was before the tax rate for that fiscal year had been established. (Sec. 3820, Political Code.) That being so it was necessary that the assessor should be governed in making his levy and collection by *some* rate and sec. 3823, supplied this (initial) rate

when it provided for the application of the tax rate for the previous year. Therefore, sec. 3824 provided for a refund in case a lower rate had been ultimately set, and an excess had thus been collected, and sec. 3825 provided for the collection of the deficiency where a higher rate had been finally set, and the full amount of the tax had not been collected.

"But sec. 9a does away with the necessity of collecting taxes in advance on a rate to be determined in the future. The first sentence of the section makes it clear in my opinion that taxes on personal property unsecured by real estate shall be levied and collected, at a rate fixed, once for all, and definitely and that such rate should be the tax rate for the preceding tax year. The effect of this section is to determine definitely and for good the rate applicable to personal property unsecured by real estate before such taxes are collected. Thus, since the correct rate will, of necessity, always be applied, there never will be any need to adjust collections on that score, on a plus or minus basis.

"Under sec. 9a, the correct rate to be applied to plaintiffs personal property for the fiscal year 1933–4 was not $3.48 (fixed by the board of supervisors later in the year) but the rate applied against real property for the last preceding year, ($3.96). Therefore, since the defendant applied the correct rate, there was no overpayment of personal property taxes as charged in plaintiffs' complaint.

"But plaintiffs contend that the above sections of the Political Code were nevertheless continued in force by the very constitutional provision relied upon by the defendant, their argument being that sec. 3824 provides a method of equalizing assessments on personal property, and that sec. 9a, expressly provides that 'Nothing in this section shall be construed to prohibit the equalization each year of the assessment on personal property in the manner now or hereafter provided by law.'

"The trouble with this argument lies in calling the above described method (whereby the assessor was enabled to collect in advance property taxes upon a rate to be decided upon in the future) a method of 'equalizing' an assessment. Although the term 'assessment' is subject to various interpretations, its meaning in sec. 9a seems to be clear enough. It would seem that the term, as used in sec. 9a, refers back to

the use of the same term in sec. 9 of the same article. The latter section provides for state and county boards of equalization 'whose duty it shall be to equalize the valuation of the taxable property in the county for the purpose of taxation . . . to increase or lower the entire assessment roll, or any assessment contained therein, so as to equalize the assessment of the property contained in said assessment roll, and make the assessment conform to the true value in money of the property contained in said roll. . . . ' In other words, sec. 9a merely means that although taxes are to be levied on unsecured personal property at the rate applied against real estate for the last preceding year, the same rule shall not apply to assessed valuation, but that the personal property so taxed at last ·year's rate must be *assessed* (i. e., 'valued' or 'appraised' for tax purposes) on the basis of its then value and not its value as of the year before. If such assessment does not conform to the true value of the property the county board of equalization is authorized to equalize the assessment to make it conform to its true value. In other words, the constitutional change was addressed to *rate* alone.

''The term 'assessment' as used in secs. 9 and 9a is in accord with the common usage of that term. In *Flinn* v. *Zerbe,* 40 Cal. App. 294, 296 [180 Pac. 650], the court cited a definition of 'assessment' from Cooley on Taxation to the effect that 'an assessment, strictly speaking, is an official estimate of the sums which are to constitute the basis of an apportionment of a tax between the individual subjects of taxation within the district. As the word is more commonly employed, an assessment consists of two processes, listing persons properly to be taxed, and of estimating the sums which are to be the guide of an apportionment of the tax between them.'

''From the foregoing it would appear that 'equalization . . . of the assessment' as used in sec. 9a means no more than adjusting the value of the property listed to conform to its real and true value. It has no reference to the *rate* to be applied against such assessed valuation. Therefore, the term cannot apply to the method adopted in sec. 3824, for adjusting excess rates as distinguished from excess valuations.

 "From the foregoing it is apparent in my opinion that the meaning of sec. 9a is clear on its face. That being so, it would seem to be unnecessary to resort, as an extrinsic aid to construction, to the arguments made in favor of the constitutional change. An examination of those arguments however indicates that it was the intent of the proponents of the measure to completely supersede sec. 3824 and sec. 3825. That such arguments are properly admissible in evidence is not open to doubt. (*City of Pasadena* v. *Railroad Commission*, 183 Cal. 526 [192 Pac. 25, 10 A. L. R. 1425]; *Cypress Lawn Cemetery Assn.* v. *City and County of San Francisco*, 211 Cal. 387, 392 [295 Pac. 813].) These arguments pointed out that under secs. 3824 and 3825, whenever any change was made in the tax rate, the county authorities would be put to the needless trouble of either refunding the excess taxes collected, or collecting the resulting deficiency with the countless computations which these processes would entail. Usually the sums involved were so small (illustrated by the comparatively small demands in these 736 causes of action) as not to justify the effort or expense and the reasons set forth in favor of the constitutional change not only fortify but clinch the conclusion reached in the first part of this memorandum.''

 There is but one additional point raised on this appeal. Plaintiffs contend that if the above construction is placed upon said section 9a of article XIII, then said section is violative of the ''equal protection of the laws'' clause of the Federal Constitution. (Article XIV, sec. 1.) Plaintiffs state that the last mentioned clause ''would render unconstitutional any construction of the amendment whereby there was a different rate on personal property for secured as distinguished from unsecured.'' But taxpayers may be treated differently if they are of different classes and a law sufficiently meets the constitutional requirement if it acts uniformly upon the whole of any single class of individuals or objects, and the classification is founded upon some natural, intrinsic or constitutional distinction. (*Fullerton Oil Co.* v. *Johnson*, 2 Cal. (2d) 162 [39 Pac. (2d) 796]; *In re Weisberg*, 215 Cal. 624 [12 Pac. (2d) 446]; *Heron* v. *Riley*, 209 Cal. 507 [289 Pac. 160]; *People* v. *England*, 140 Cal. App. 310 [35 Pac. (2d) 565].) There can be no doubt that there is a natural, intrinsic and constitutional dif-

ference between secured and unsecured taxes. (*Rode* v. *Seibe,* 119 Cal. 518, 521 [51 Pac. 869, 39 L. R. A. 342].)

The judgment is affirmed.

Nourse, P. J., and Sturtevant, J., concurred.