[L.A. No. 31241. Aug. 14, 1980.]

ROY E. HANSON, JR. MFG., Plaintiff and Respondent, v.
COUNTY OF LOS ANGELES et al., Defendants and Appellants.

COUNSEL

John H. Larson, County Counsel, Lawrence B. Launer, David L. Muir, Philip H. Hickok and Mary F. Wawro, Deputy County Counsel, for Defendants and Appellants.

O'Melveny & Myers, Bennett W. Priest, Frederick A. Richman and Glen L. Kulik for Plaintiff and Respondent.

David Daar, Michael R. Newman, Miller & Daar and Erwin Sobel as Amici Curiae on behalf of Plaintiff and Respondent.

OPINION

MOSK, J.—The County of Los Angeles appeals from a judgment awarding plaintiff taxpayer a refund of taxes paid on property assessed on the 1978-1979 unsecured tax roll. The sole issue is whether the tax rate limitation established by article XIII A of the California Constitution, adopted by the voters in June 1978 as Proposition 13, is applicable to the unsecured roll for the tax year 1978-1979.

For the reasons stated in *Board of Supervisors* v. *Lonergan* (1980) *ante*, page 855 [167 Cal.Rptr. 820, 616 P.2d 802], we conclude that article XIII A does not apply to the 1978-1979 unsecured roll. We do so after considering in this case an alternate theory presented by the respondent.

 Taxpayer contends the application of the 1 percent rate limitation established by Proposition 13 to the 1978-1979 unsecured tax roll is mandated by article XIII, section 12, subdivision (b) of the California Constitution.[1] That provision states: "In any year in which the assessment ratio is changed, the Legislature shall adjust the rate described in subdivision (a) to maintain equality between property on the secured and unsecured rolls." According to taxpayer, subdivision (b) furnishes an exception to the general requirement of subdivision (a) that property on the unsecured roll be taxed at the rate applied to the previous year's secured roll. It maintains the exception is applicable

[1]The general principles of the California property taxation system are discussed in *Board of Supervisors* v. *Lonergan, supra, ante,* page 855. Here, as in that opinion all constitutional references are to the California Constitution and all statutory references are to the Revenue and Taxation Code.

here because the adoption of article XIII A resulted in a change in the assessment ratio within the meaning of subdivision (b), and the Legislature made the required adjustment in the tax rate by enacting section 2237 to establish a uniform rate of $4 per $100 of assessed value.

Taxpayer's theory rests on the definition of assessment ratio as the ratio, "expressed as a percentage, of 'assessed value' to market value...." (*County of Sacramento* v. *Hickman* (1967) 66 Cal.2d 841, 848 [59 Cal.Rptr. 609, 428 P.2d 593].) All property subject to general property taxation is to be assessed at 25 percent of its "full value." (§ 401.) Prior to the adoption of article XIII A, "full value" was defined as "fair market value" (§ 110.5), which is essentially current value in the open market (§ 110). As we explained in *Amador Valley Joint Union High Sch. Dist.* v. *State Bd. of Equalization* (1978) 22 Cal.3d 208, 235 [149 Cal.Rptr. 239, 583 P.2d 1281], under article XIII A, section 2, subdivision (a), real property is to be assessed and taxed at its value at date of acquisition. The county maintains the assessment ratio has remained 25 percent under section 401, but taxpayer asserts a change in the ratio has effectively occurred because the percentage is now applied to a different valuation standard.

Although the contention has superficial appeal, it is flawed for two reasons. First, the definition of assessment ratio set forth in *County of Sacramento* v. *Hickman, supra*, 66 Cal.2d 841, as the percentage of assessed value to market value, accurately reflected the *then existing* system of assessing and taxing property at a percentage of fair market value. ■ Article XIII, section 1, however, provides that a value standard other than fair market value may be utilized when prescribed by the Constitution or by statute. Under the authority of this provision, article XIII A replaced the fair market valuation standard with that of acquisition value. Accordingly, we are not bound by the earlier definition of assessment ratio. In our view the assessment ratio is the percentage of assessed value to full value and, although full value was once synonymous with fair market value, that is no longer the case. Our conclusion is consistent with the statement in article XIII, section 1, that "The value to which the percentage is applied, whether it be the fair market value or not, shall be known for property tax purposes as the full value."

■ Second, assuming arguendo the correctness of the contention that the assessment ratio has been changed, it will not support the conclusion taxpayer would have us reach. The obvious purpose of article

XIII, section 12, subdivision (b), is to assure that in any year in which the assessment ratio is changed, taxes on the unsecured roll are fairly assessed by adjusting the current rate for the unsecured roll to accurately reflect the rate for the prior year's secured roll. As explained in *Abrams* v. *San Francisco* (1941) 48 Cal.App.2d 1, 6 [119 P.2d 197], construing the predecessor provision to article XIII, section 12: "although taxes are to be levied on unsecured personal property at the rate applied against real estate for the last preceding year, the same rule shall not apply to assessed valuation,...[T]he personal property so taxed at last year's rate must be *assessed*...on the basis of its then value and not its value as of the year before." Thus when the assessment ratio is changed, 'subdivision' (b) requires that the rate be adjusted in accordance with the new assessed valuation in order to maintain uniformity in taxation with the prior year's secured roll. In other words, subdivision (b) is in furtherance of the principle of successive year equality between the rolls; it may not be used to compel roll uniformity in the same year.

The judgment is reversed.

Tobriner, J., Clark, J., Richardson, J., Manuel, J., and Newman, J., concurred.

Bird, C. J., concurred in the judgment.

Respondent's petition for a rehearing was denied September 17, 1980.