[Civ. Nos. 17524, 17699. Third Dist. May 10, 1979.]

EVERARD C. CALL et al., Plaintiffs and Respondents, v.
GEORGE FEHER et al., Defendants,
Cross-complainants and Appellants;
CALIFORNIA TAHOE REGIONAL PLANNING AGENCY,
Cross-defendant and Respondent.

**COUNSEL**

David B. Mogilefsky, in pro. per., and for Defendants, Cross-complainants and Appellants.

Alan H. Nichols for Plaintiffs and Respondents.

Evelle J. Younger, Attorney General, R. H. Connett, Assistant Attorney General, and Craig C. Thompson, Deputy Attorney General, for Cross-defendant and Respondent.

## OPINION

**REGAN, Acting P. J.**—This is an appeal by defendants and cross-complainants, George Feher, Albert Jackson and David B. Mogilefsky (defendants), from a judgment of dismissal entered upon an order sustaining the demurrer of cross-defendant, California Tahoe Regional Planning Agency (CTRPA), to all causes of action in defendants' second amended cross-complaint for declaratory relief without leave to amend. Defendants also appeal from the summary judgment entered for plaintiffs Everard C. Call and Beth S. Call (plaintiffs).

### FACTS

This action was originally filed by plaintiffs to foreclose the lien of a street improvement bond which they owned. The bond, number 343 (Kingswood West Assessment District, Series No. 1970-2), was issued by the County of Placer to "represent the cost of construction of improvements and acquisitions in Kingswood West Assessment District . . . ." The real property securing bond 343 and affected by the County of Placer's assessment is parcel No. 351, a portion of the Kingswood West Assessment District. Plaintiffs' foreclosure action, filed pursuant to Streets and Highways Code section 6610 et seq., was successful.

Feher and Jackson sold certain real property including parcel 351 to a developer in 1969. A tentative subdivision map was filed in January 1970. Bond 343 was sold to plaintiffs in the face amount of $98,867.54. The public improvements for which Kingswood West Assessment District was formed were completed by the county. Feher and Jackson reacquired parcel 351 from the developer in July 1971, which they attempted to sell during the next four years. On May 28, 1971, the tentative subdivision map filed as to parcel 351 was extended for one year, but expired in August 1972. In September 1975, CTRPA enacted its Land Use Ordinance which prohibits, under certain defined circumstances, the subdivision of parcel 351.

Feher and Jackson failed to pay the assessments on parcel 351, beginning with principal and interest payments due on January 2, 1976. On June 15, 1976, after appropriate notices were given as required by law, plaintiffs filed the complaint to foreclose the bond. It was discovered that Feher and Jackson deeded their interest in parcel 351 to defendant Mogilefsky on August 27, 1976, 11 months after the effective date of CTRPA's Land Use Ordinance. The complaint to foreclose was filed on October 17, 1977. Answers were filed by defendant Mogilefsky as attorney for himself and for defendants Feher and Jackson. The actions were consolidated on February 6, 1978.

In the meantime, defendants filed a cross-complaint for declaratory relief against Placer County, plaintiffs and CTRPA, seeking a declaration that the affected property should have a "vested right" to effect a subdivision.

CTRPA then filed a general and special demurrer to the second amended cross-complaint as well as a motion to strike. On January 12, 1978, the superior court issued a minute order denying the motion to strike, but sustained the general demurrer without leave to amend. On February 6, 1978, defendants filed a notice of appeal from the ensuing judgment of dismissal.

While appeal from the judgment of dismissal of the second amended cross-complaint against CTRPA was pending, plaintiffs filed motions for summary judgment and for judgment on the pleadings. The court granted the motion for summary judgment of foreclosure on March 14, 1978, and made an order of sale on March 29, 1978. Defendants thereafter appealed.

By order dated July 21, 1978, this court consolidated defendants' appeal from the judgment of dismissal of their second amended cross-complaint, with their appeal from the summary judgment in favor of plaintiffs on the bond foreclosure.

ISSUES

1. ■ Had defendants exhausted their administrative remedies with CTRPA before filing the second amended cross-complaint? We answer in the negative.

Defendants contend CTRPA's demurrer to their second amended cross-complaint was improperly sustained because such complaint affirmatively alleged defendants had exhausted their administrative remedies.[1] They now claim they were excused from pursuing such remedies because they were convinced such pursuit would be futile. On September 30, 1977, counsel for defendants Feher and Jackson, wrote to CTRPA and its counsel, promising to make a "formal request to the CTRPA for a vested rights determination . . . ." CTRPA's executive officer replied on October 5, 1977, that the agency "does not review projects upon which legal action is pending." And that, in the view of the staff, "it is our opinion that amending the ordinance as you proposed would not be looked upon favorably by the Governing Board." Although CTRPA's reply letter may have disheartened defendants, it did not relieve them of their obligation to exhaust administrative remedies.

Defendants argue that the CTRPA staff's unfavorable disposition toward their case brought it within the exception to the exhaustion doctrine for cases in which it could be proven with certainty that exhaustion would have been futile because the agency had already ruled on the case. (*Ogo Associates* v. *City of Torrance* (1974) 37 Cal.App.3d 830, 834 [112 Cal.Rptr. 761].) The present set of facts is distinguishable from those cases where the doctrine applies. Here, the opinion expressed was that of the staff not of the decision-making body, the governing board. As noted by CTRPA in their reply brief, "[w]hether the Board would have agreed with its staff or—as is often the case in administrative agency practice—would have disagreed with the staff and ruled in favor of defendants cannot be known because defendants never presented the Board with the question." What CTRPA's ruling would be is not clear from the facts presented and there is no reason for not pursuing further administrative remedies required by the exhaustion doctrine.

In cases dealing with vested rights claims similar to the one at issue here (whether one who seeks a vested right to be exempted from administrative regulatory control must seek an exemption from the administrative agency promulgating the controls), it has been concluded that before seeking judgment from the court, a claimant must secure a determination as to such rights. (*State of California* v. *Superior Court (Veta)* (1974) 12 Cal.3d 237, 248-250 [115 Cal.Rptr. 497, 524 P.2d 1281]; see also, *South Coast Regional Com.* v. *Gordon* (1977) 18 Cal.3d 832, 834-835 [135 Cal.Rptr. 781, 558 P.2d 867].) ■ Those decisions declare

---

[1]Administrative remedies in matters over which CTRPA has jurisdiction are provided by ordinances and regulations of that agency.

that the fact the concept of vested rights is rooted in the Constitution does not deprive an administrative agency of the power to enact regulations governing claims of exemption. The agency has the power to make the initial determination whether an exemption is warranted, so long as ultimate judicial review is provided. Defendants are required to present their claim of exemption to the commissioner before raising the matter in the trial court. Nonetheless, we shall address the substantive issues. (Cf. *La Costa Beach Homeowner's Assn.* v. *Wayne* (1979) 89 Cal.App.3d 327 [152 Cal.Rptr. 355].)

2. ▮▮▮ Did the second amended cross-complaint allege a proper cause of action for declaratory relief as between defendants and the CTRPA upon which the court could have found that defendants had a "vested right" to subdivide the subject land? Our answer is negative.

Defendants argue that information apparent on the face of the second amended cross-complaint is sufficient to raise proper issues for declaratory judgment. The complaint alleges in pertinent part:

"8. Cross-Complainants have claimed a vested right to subdivide the subject property, and have requested that CTRPA consider making a determination that Cross-Complainants have a vested right to subdivide the subject property, but CTRPA has refused to consider Cross-Complainants' claim of vested right.

"Cross-Complainants' administrative remedies have been exhausted."

It was argued to the trial court and is reiterated on appeal that the "vested right" alleged is based upon Placer County's assessment district creation, bond issuance, land assessment and actual installation by the county of roads, storm drains, sewer lines, water mains, and underground utility conduits for electricity, gas, telephone and cable television. By making payments on the assessment bond issued for the purpose of financing the county's subdivision improvements upon the land securing the bond, defendants claim they have incurred substantial indebtedness in reliance upon being able to subdivide the property. Defendants contend these activities reflect governmental approval sufficient to give them a vested right to complete the residential subdivision.

CTRPA was created in 1967 to create a broad and comprehensive program for protecting the Lake Tahoe and Lake Tahoe basin environment. (Gov. Code, § 67000 et seq.) The California Supreme Court has

recognized that protection of the Lake Tahoe basin is one of the state's highest priorities. (*People* ex rel. *Younger* v. *County of El Dorado* (1971) 5 Cal.3d 480 [96 Cal.Rptr. 553, 487 P.2d 1193].)

In carrying out its responsibilities, CTRPA adopted a regional plan and enacted a Land Use Ordinance. Section 5.13 of the ordinance, the focus of the cross-complaint, prohibits the creation of additional lots in the region until 85 percent of the lots existing as of August 29, 1975, have been put to either commercial or residential use. The need for this interim constraint on the creation of additional lots is explained in the regional plan as being due to the dramatic and excessive creation of new lots during the years 1950-1971 and the resulting potential for massive population growth harmful to the environmental quality of the basin.

Defendants do not contend that section 5.13 or the policies which it promotes are irrational, unconstitutional, or otherwise subject to attack. Instead, they argue that they have a vested right to subdivide property because the property was "in effect, in use as residential subdivision property prior to the effective date of the said [CTRPA Land Use] Ordinance."

The leading California vested rights case controls. (*Avco Community Developers, Inc.* v. *South Coast Regional Com.* (1976) 17 Cal.3d 785 [132 Cal.Rptr. 386, 553 P.2d 546].) In *Avco,* the developer had spent more than $2 million grading and building roads and other street improvements in preparation for the construction of a large residential planned-unit development. There had been repeated governmental approvals of the development but building permits had not been obtained and construction of units had not begun, since under county ordinances building permits could not be obtained until after the completion of grading. (*Id.,* at pp. 789-790.) The Supreme Court determined that there was no vested right to complete any of the contemplated structures. In reaching its decision, the court succinctly stated California vested rights law (17 Cal.3d at p. 791): ■ "It has long been the rule in this state and in other jurisdictions that if a property owner has performed substantial work and incurred substantial liabilities in good faith reliance upon a permit issued by the government, he acquires a vested right to complete construction in accordance with the terms of the permit."

The court also noted in *Avco* that its decision rested on sound policy grounds because of the importance of maintaining flexibility in land use control: "If we were to accept the premise that the construction of

subdivision improvements or the zoning of the land for a planned community are sufficient to afford a developer a vested right to construct buildings on the land in accordance with the laws in effect at the time the improvements are made or the zoning enacted, there could be serious impairment of the government's right to control land use policy. In some cases the inevitable consequences would be to freeze the zoning laws applicable to a subdivision or a planned unit development as of the time these events occurred." (*Id.,* at p. 797.)

Defendants claim the controversy they wish to submit for declaratory judgment is whether subdividing 60 acres into 60 one-acre parcels may take place. However, when the facts are considered with controlling case law, no such controversy exists.

Defendants admit they do not have any rights based on a final or tentative subdivision map approval. Although a tentative subdivision map for the parcel had once existed, it expired in 1972. No right to subdivide could survive this expiration. (*Oceanic California, Inc.* v. *North Central Coast Regional Com.* (1976) 63 Cal.App.3d 57, 75-76 [133 Cal.Rptr. 664].) Defendants alleged governmental approval arises from the actions taken with respect to the installation of various tract improvements by the County of Placer. As *Avco* holds, the installation of various tract improvements does not vest a right even where done by the property owner himself. (17 Cal.3d at p. 793.) California vested rights law requires that the final discretionary approval has been given and *substantial* liabilities in good faith reliance on that approval have been undertaken before a vested right accrues. (17 Cal.3d at p. 791; *Raley* v. *California Tahoe Regional Planning Agency* (1977) 68 Cal.App.3d 965, 976-978 [137 Cal.Rptr. 699].) The final approval enabling one to subdivide land, pursuant to California statutes, is a final map approval, which defendants never filed for or possessed. Without such final map approval, under the circumstances of this case, no cause of action based on a vested right theory can be stated. (See Gov. Code, §§ 66473-66474.7.)

Defendants further contend the government cannot enact laws that impair the obligations of assessment bonds. The principle of law stated in *County of San Bernardino* v. *Way* (1941) 18 Cal.2d 647 [117 P.2d 354], that the laws in existence at the time of the issuance of municipal bonds enter into and become a part of the contract to the extent that obligation of the contract cannot thereafter be impaired by a change in such laws, is of no consequence in this case. The contractual obligation created by the

improvement bond is not impaired by the CTRPA Land Use Ordinance. The bond obligated landowners to pay money and Placer County to construct certain improvements on their land in exchange. Although the predecessors in interest of defendants paid only a portion of the money due on the bond, Placer County continued construction of the improvements under the bond. Nothing CTRPA did prevented either party from completing their respective obligations under the bond.

The impairment of contract doctrine asserted by defendants is further made inapplicable by the California Supreme Court in *Avco, supra,* 17 Cal.3d 785. *Avco* contended that it had contracted with a local district and the state for a commitment that it would be allowed to develop its land in connection with the planned community zoning and other prior approvals. The Supreme Court agreed with the trial court's conclusion that the actual scope of the contract was not relevant as the government "may not contract away its right to exercise the police power in the future." (17 Cal.3d at p. 800.)

From the discussion set forth above it can be concluded that no cause of action has been stated or lies for declaratory relief. Defendants' claim is unfounded as a matter of law. (See *Haley* v. *L.A. County Flood Control Dist.* (1959) 172 Cal.App.2d 285, 292-293 [342 P.2d 476]; 3 Witkin, Cal. Procedure (2d ed. 1971) Pleading, § 732, p. 2353.)

3. ■■■ Was the summary judgment on the bond foreclosure improper under the doctrine of commercial "frustration"? Again, our answer is negative.

Defendants claim that the imposition of zoning or other restrictions against real property, which render it of less value, is a sufficient ground to deny a bondholder the right of foreclosure as provided in Streets and Highways Code section 6610 et seq. is unfounded.

Pursuant to the Improvement Act of 1911 and the Municipal Improvement Act of 1913, under which the Kingswood West Assessment District bonds were issued and the assessment levied, the proceeds from the sale of the bonds were used to construct the assessment district improvements. Thus, plaintiffs received their bond, the county received the purchase price, and the predecessor owners of parcel 351 received their allocated benefits. Defendants do not deny the improvements were constructed as authorized nor do they claim an implied agreement with the issuing entity and with the bondholder for the benefit of a subsequent landowner to further subdivide the parcel.

■ There can be no commercial frustration when the landowner has received the consideration for which his land was assessed (i.e., tract improvements) and had several years to dispose of the property.

Furthermore, commercial frustration has been applied only to consensual agreements. The levying of an assessment and issuance of bonds are made with or without the agreement of the landowner. Land is assessed not because of an agreement but because of the lien-levy procedure under the applicable law. The only true contract is the bond between the issuing entity and the bondholder to which the landholder is not a part. *Sutter Basin Corp.* v. *Brown* (1953) 40 Cal.2d 235, 241 [253 P.2d 649], cited by defendants, and cases cited in that opinion apply contract law concepts but only to prevent the government entity from changing the terms of the assessment and unconstitutionally impairing the obligations of the contract once bonds have been issued.

■ Assuming a contractual relationship between the bondholder and the predecessor owner, the defense of commercial frustration requires that the basic reason for entering into the subject contract is recognized by both parties. (*Lloyd* v. *Murphy* (1944) 25 Cal.2d 48 [153 P.2d 47]; *Dorn* v. *Goetz* (1948) 85 Cal.App.2d 407 [193 P.2d 121]; *McCulloch* v. *Liguori* (1948) 88 Cal.App.2d 366 [199 P.2d 25].) The evidence does not reveal a consensual relationship between plaintiffs and defendants at any time. Plaintiffs had no understanding with any of the defendants that the bond would be reduced or the terms changed if the land was not subdivided.

The doctrine of frustration is unsupported by any evidence in the record. There is no evidence showing that governmental zoning restrictions were not foreseeable or that the defendants Feher and Jackson could not have developed their land within the four-year period of ownership or that they had not received the consideration. In *McCulloch* v. *Liguori, supra,* 88 Cal.App.2d at page 373, the court holding that the doctrine of commercial frustration did not apply, commented that ". . . 'a person contracting with eyes open and aware of the facts is presumed to undertake performance at the risk of interference from agencies not expressly provided against.' "

■ Defendants' final argument is that deprivation of property resulting from environmental restrictions is legally permissible only when it results in "equity" as between owners of conflicting interests in the land. Defendants base their argument on the decision of *Eldridge* v. *Burns*

(1978) 76 Cal.App.3d 396 [142 Cal.Rptr. 845]. Although the case expounded several issues, the equitable conclusion significant to the present case is that the trial court in *Eldridge* erred in permitting the seller to foreclose on 600 acres of a 750-acre parcel without making some provision to prevent the forfeiture of these property rights by the buyer before the default in the form of nonpayment of taxes, assessments and payments on a promissory note. (*Id.* at pp. 431-439.) Equity is to be determined on a case-by-case basis and the solution in *Eldridge* is not exclusive to all cases where deprivation of lands results from environmental restrictions. (*Id.,* at p. 440.) The factual setting of *Eldridge* is not sufficiently similar to compel this court to apply the equitable resolutions set out in *Eldridge*.

In *Eldridge* the purchaser of land failed to pay taxes and assessments when due under a purchase money deed of trust, and the seller failed to give releases as promised. At the same time, the property was down-zoned by the city. The assessment bondholder was not a party to the action, and no one contended the bondholder payments should be reduced.

Here, plaintiffs did not sell to or buy the property from defendants. Furthermore, as the court pointed out in *Eldridge,* the vendor was in breach of the agreement for not having provided releases as agreed. There is no evidence nor any contention that plaintiffs here were in breach of any agreement with defendants. There are different equities as between a vendor and a purchaser on a purchase money mortgage than as between a bondholder and a landowner, in which there is no consensual agreement. The "equitable" result in *Eldridge* is inapplicable to the facts at hand.

The judgments are affirmed. Plaintiffs' motion for attorney's fees on appeal is granted and the cause is remanded to the trial court with directions to determine reasonable fees for services performed on behalf of plaintiffs on appeal and to add such fees to the appropriate judgment. (See Code Civ. Proc., § 1021; Sts. & Hy. Code, § 6615; *American City Bank* v. *Zetlen* (1969) 272 Cal.App.2d 65, 69 [76 Cal.Rptr. 898]; *T. E. D. Bearing Co.* v. *Walter E. Heller & Co.* (1974) 38 Cal.App.3d 59, 65 [112 Cal.Rptr. 910]; 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 587, subd. (2), pp. 4518-4519.)

Evans, J., and Reynoso, J., concurred.