[No. A046211. First Dist., Div. One. June 7, 1991.]

THUEL V. SCHUHART, Plaintiff and Respondent, v.
JOSE C. PINGUELO et al., Defendants and Appellants.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts III and IV.

**COUNSEL**

Meyers, Nave, Riback & West, Steven R. Meyers, Elizabeth H. Silver and Andrea J. Saltzman for Defendants and Appellants.

Sturgis, Ness, Brunsell & Sperry and Robert Brunsell as Amici Curiae on behalf of Defendants and Appellants.

Nichols, Doi, Rapaport & Chan, Alan H. Nichols and George C. Leal for Plaintiff and Respondent.

**OPINION**

DOSSEE, J.—In this action for foreclosure based on delinquent payments on assessment bonds, the trial court granted the bondholder's motion for

summary judgment. The owners of the property securing the bonds contend the trial court improperly calculated penalties owed on the bonds, and improperly granted summary judgment without considering their affirmative defenses.

The judgment is reversed, and the matter is remanded for further proceedings in accordance with this opinion.

*Factual and Procedural Background*

Thuel V. Schuhart is the owner of two assessment district bonds issued by the Pleasanton Township County Water District in 1965 (bond nos. 3 and 4). The bonds were issued pursuant to the Improvement Act of 1911 (Sts. & Hy. Code, § 5000 et seq.)[1] in order to construct public improvements for the benefit of certain parcels of real property.

Pursuant to the Improvement Act, assessments are levied against each parcel of real property benefitted by improvements, and the assessment becomes a lien against the parcel. (§§ 5343, 5360, 6446.) A separate bond representing each unpaid assessment may then be issued to finance the improvements. (§§ 6400, 6420, 6422.)

Bond numbers 3 and 4 had face values of $12,000 and $11,000, respectively, representing the assessment against the parcel of real property specified in each bond (assessment nos. 3 and 4). The bonds had terms of 19 years and provided for annual payments of principal, semiannual payments of interest at a rate of 6 percent per annum on the unpaid principal, and monthly penalties for delinquent payment.

Jose C. and Mary A. Pinguelo own an 80-acre parcel of real property which consists of the southern halves of assessments 3 and 4.[2] The Pinguelos purchased the property at a tax sale in 1977 for $42,000, and they estimated that the property was worth $240,000 at the time of the proceedings in the trial court. The northern halves of assessments 3 and 4 were sold separately, and a defunct corporation, Great Western Ranches, Inc., was believed to own some interest in those halves.

There has been no payment on bond number 3 since July 2, 1970, and no payment on bond number 4 since January 2, 1971. On March 1, 1988, Schuhart filed a complaint in Alameda County Superior Court seeking the sale of the parcels of real property securing bond numbers 3 and 4 in order

---

[1] All further statutory references are to the Streets and Highways Code unless otherwise noted.

[2] It is not known how the parcels of real property representing assessment numbers 3 and 4 came to be divided in half.

to collect the amount of principal, interest and penalties due. Great Western Ranches, Inc., did not answer the complaint, and its default was entered as requested by Schuhart.

The Pinguelos moved for summary adjudication on the issue of the percentage rate to be used to calculate the penalty to be levied as a result of the delinquent bond payments. Schuhart opposed the motion and in turn moved for summary judgment, or in the alternative, summary adjudication of issues.

There was no significant dispute over the amount of principal and interest due on the bonds. There was, however, a substantial disagreement over the amount of penalties owed.

According to Schuhart, $173,435.98 in penalties were owed on bond number 3, and $152,509.39 in penalties were owed on bond number 4. According to the Pinguelos, $21,751.92 in penalties were owed on bond number 3, and $19,299.04 in penalties were owed on bond number 4. The figures submitted by the Pinguelos were calculated by the City Manager of the City of Pleasanton.

The differences between the two calculations were the result of Schuhart compounding the penalties and using a 2 percent rate for penalties imposed after January 1, 1981.

The trial court denied the Pinguelos' motion for summary adjudication and, on April 19, 1989, signed an order granting summary judgment in favor of Schuhart. The trial court accepted Schuhart's method of calculating the penalties and found the following sums due on the bonds through March 31, 1989:

| | Bond No. 3 | Bond No. 4 |
|---|---|---|
| Unpaid principal | $ 10,440.00 | $ 9,570.00 |
| Interest | 21,660.71 | 18,998.61 |
| Penalties | 188,576.28 | 165,700.90 |
| Total: | $220,676.99 | $194,269.51 |

The court ordered the Sheriff of Alameda County to sell assessment numbers 3 and 4 in order to satisfy the obligations and awarded Schuhart $32,573.75 in attorney's fees to be paid by the Pinguelos.

The Pinguelos appeal, and the Special Assessment/Mello-Roos Division of the Public Securities Association, Division VI (hereafter, Public Securities

Association) has filed a brief in support of the Pinguelos' positions on the penalties issues.

*Discussion*

I. *Two Percent Penalty*

■ The penalty clause in the bonds is derived from section 6442, which provided for a 1 percent per month penalty until it was amended in 1980 (effective Jan. 1, 1981) at which time the penalty was increased to 2 percent per month. (Stats. 1980, ch. 378, § 1, p. 753.)[3] In accepting Schuhart's method of calculation, the trial court applied the 2 percent penalty to principal and interest that became due after January 1, 1981. The Pinguelos contend the application of the 2 percent penalty unconstitutionally impairs the obligation of the contracts created by the bonds.

Article I, section 10 of the United States Constitution, and article I, section 9 of the California Constitution, prohibit the passing of any law impairing the obligation of contracts. ■ It has long been the law of this state that the issuance of assessment bonds creates a contract between the property owners and the bondholders. (*Sutter Basin Corp.* v. *Brown* (1953) 40 Cal.2d 235, 241 [253 P.2d 649]; *County of San Diego* v. *Childs* (1932) 217 Cal. 109, 120 [17 P.2d 734].) The laws in existence at the time the bonds are issued and under which the bonds are issued "enter into and become a part of the contract to such an extent that the obligation of the contract cannot thereafter be impaired or fulfillment of the bond obligation hampered or obstructed by a change in such laws. [Citation.]" (*County of San Bernardino* v. *Way* (1941) 18 Cal.2d 647, 661 [117 P.2d 354].)

In *Islais Co., Ltd.* v. *Matheson* (1935) 3 Cal.2d 657 [45 P.2d 326], the Supreme Court held that an amendment of a statute which reduced the penalties and interest rate on amounts delinquent on reclamation district

---

[3]Section 6442, as effective at the time bond numbers 3 and 4 were issued, provided: "If any installment of the principal of the unpaid assessment or of interest thereon is not paid to the treasurer on or before the due date, to wit, the June 1st or December 1st, as the case may be, next preceding the date upon which the coupons representing it are payable to the bondholder, the treasurer shall after the close of business on said due date add to the principal or interest so delinquent a penalty of 1 percent of the total amount of such delinquency, and at the beginning of the business on the first day of each succeeding month until such delinquent payment and all penalties thereon are fully paid, he shall add an additional penalty of 1 percent of the amount of such delinquency. The treasurer shall collect such penalties with and as a part of the delinquent payment. The first 1 percent shall be retained by the treasurer as a cost of servicing the delinquency, and shall not be included in the penalties herein otherwise provided to be paid to the bondholder." (Stats. 1963, ch. 1226, § 1, pp. 2744-2745.)

The bonds incorporate the preceding language with minor nonsubstantive changes.

bonds deprived the bondholders of their security, and thus materially affected their constitutional rights. (*Id.* at pp. 664-665.) "When the bonds involved herein were authorized, issued and sold, the statute fixed the penalties and the rate of interest after delinquency and for redemption and set apart the sums so to be charged and collected exclusively for payment of principal and interest on said bonds. The contract rate of penalty and interest must therefore be held to persist as against an attempted retroactive statute materially affecting the fund, unless the reduction may be justified under established principles of law." (*Id.* at p. 662.)

 Schuhart argues that because the trial court used the 2 percent rate only to determine penalties due after January 1, 1981, the amendment of section 6442 was applied prospectively. However, the cases Schuhart relies on to support his position merely apply the general principles regarding the retroactive application of statutes and do not discuss the constitutional prohibition on the impairment of contracts. (See *Kizer* v. *Hanna* (1989) 48 Cal.3d 1 [255 Cal.Rptr. 412, 767 P.2d 679]; *Armstrong* v. *County of San Mateo* (1983) 146 Cal.App.3d 597 [194 Cal.Rptr. 294].)

The event which determined the law to be applied in this case was the issuance of the bonds. (*Sutter Basin Corp.* v. *Brown, supra,* 40 Cal.2d at p. 241; see also *Meriwether Invest. Co., Ltd.* v. *Lampton* (1935) 4 Cal.2d 697, 702 [53 P.2d 147]; *State School Bldg. Fin. Com.* v. *Betts* (1963) 216 Cal.App.2d 685, 691 [31 Cal.Rptr. 258].) Not only did the law in effect at the time of issuance provide for a 1 percent penalty, but the face of the bonds themselves provided for a 1 percent penalty. The application of the 2 percent penalty changes the obligation created by the bonds, and according to the evidence submitted by the Pinguelos, the increase in the penalty rate resulted in additional penalties of over $26,000 even without being compounded (see § II, p. 1607, *post*). This is a substantial change in the obligation assumed by the Pinguelos under bonds with face values of $12,000 and $11,000.

Schuhart asserts the Legislature increased the penalty imposed by section 6442 because the 1 percent penalty had so little effect that defaults were actually encouraged. Schuhart suggests that to the extent the case law prevents the retroactive modification of assessment bond procedures and remedies, those cases are "out-dated pronouncements of constitutional law."

The cases discussed above and relied upon by the Pinguelos are from this state's highest court, which we are bound to follow, and there has been no indication from the Supreme Court that it intends to deviate from the holdings in those cases. Schuhart cites *City of Torrance* v. *Workers' Comp.*

*Appeals Bd.* (1982) 32 Cal.3d 371 [185 Cal.Rptr. 645, 650 P.2d 1162], which involved an amendment to the Labor Code and is wholly inapposite as in that case, "the language of the agreements between the [parties] clearly indicates that it was the intention of all the parties to incorporate subsequent changes in the law." (*Id.* at p. 379.) Here, the express language of the contract provides for a penalty of 1 percent per month.[4] Schuhart also cites *Allied Structural Steel Co.* v. *Spannaus* (1978) 438 U.S. 234 [57 L.Ed.2d 727, 98 S.Ct. 2716], in which the United States Supreme Court set forth the analysis to be applied when it is claimed that a state law unconstitutionally impairs a contractual obligation. As the Supreme Court explained, the state may impair a contractual relationship in the legitimate exercise of its police powers. (*Id.* at pp. 242-244 [57 L.Ed.2d at pp. 734-736]; see *Islais Co., Ltd.* v. *Matheson, supra,* 3 Cal.2d at pp. 663-664.) Here, there is no indication that the Legislature was exercising police powers to protect a broad societal interest. (See *Allied Structural Steel* v. Spannaus, *supra,* 438 U.S. at p. 242 [57 L.Ed.2d at p. 735].)

Finally, Schuhart, with no citation to relevant authority, argues the Pinguelos have no contract rights to impair because they purchased their property at a tax sale free of all encumbrances.

Schuhart has advanced no credible reason why a purchaser at a tax sale should be treated differently than any other purchaser who is bound by the assessment lien. (See *Talbot* v. *Wake* (1977) 74 Cal.App.3d 428, 442 [141 Cal.Rptr. 463].) With certain exceptions, a tax deed conveys title free from encumbrances. (Rev. & Tax. Code, § 3712.) One of those exceptions is any lien for installments of taxes and special assessments. (*Ibid.*)

Schuhart and the Pinguelos are bound by the terms of the bonds, and the amendment of section 6442 increasing the penalty does not alter those terms under the circumstances of this case. The trial court's decision to apply the 2 percent per month penalty to principal and interest that became delinquent after January 1, 1981, was erroneous.

---

[4] See also *Call* v. *Feher* (1979) 93 Cal.App.3d 434 [155 Cal.Rptr. 387], which Schuhart states shows California courts no longer find a contract between the bondholder and the landowner. The *Call* court, in rejecting a landowner's argument that zoning restrictions frustrated the purpose of assessment bonds, did state that the "only true contract" is between the issuing entity and the bondholder. However, the court acknowledged that the California Supreme Court has applied contract law concepts "to prevent the government entity from changing the terms of the assessment and unconstitutionally impairing the obligations of the contract once bonds have been issued." (*Id.* at p. 445, citing *Sutter Basin Corp.* v. *Brown, supra,* 40 Cal.2d 235.)

## II. *Compounding of Penalties*

 The Pinguelos assert the trial court committed a second error when it interpreted section 6442 (and the penalty clause in the bond) to allow compounding of the monthly penalty.

 Interpretation of a statute is a question of law, subject to independent review by this court. (*California Teachers Assn.* v. *San Diego Community College Dist.* (1981) 28 Cal.3d 692, 699 [170 Cal.Rptr. 817, 621 P.2d 856].) Our task is to ascertain the intent of the Legislature in order to effectuate the purpose of the law. (*Fontana Unified School Dist.* v. *Burman* (1988) 45 Cal.3d 208, 218 [246 Cal.Rptr. 733, 753 P.2d 689].) We look first to the words of the statute, giving to the language its usual, ordinary meaning. (*Ibid.*) "[I]f statutory language is 'clear and unambiguous there is no need for construction, and courts should not indulge in it.' [Citation.]" (*Tiernan* v. *Trustees of Cal. State University & Colleges* (1982) 33 Cal.3d 211, 218 [188 Cal.Rptr. 115, 655 P.2d 317].)

 Again, section 6442, as effective at the time the bonds were issued, provided: "If any installment of the principal of the unpaid assessment or of interest thereon is not paid to the treasurer on or before the due date, to wit, the June 1st or December 1st, as the case may be, next preceding the date upon which the coupons representing it are payable to the bondholder, the treasurer shall after the close of business on said due date add to the principal or interest so delinquent a penalty of 1 percent of the total amount of such delinquency, and at the beginning of the business on the first day of each succeeding month until such delinquent payment and all penalties thereon are fully paid, he shall add an additional penalty of 1 percent of the amount of such delinquency. The treasurer shall collect such penalties with and as a part of the delinquent payment. The first 1 percent shall be retained by the treasurer as a cost of servicing the delinquency, and shall not be included in the penalties herein otherwise provided to be paid to the bondholder." (Stats. 1963, ch. 1226, § 1, pp. 2744-2745.)

The Pinguelos and the Public Securities Association argue that there is no ambiguity with regard to the calculation of penalties, and that section 6442 plainly does not provide for compounding. (See also § 6460.) They point out that the penalty is calculated at a rate of 1 percent of the amount of "such delinquency," which means the delinquent principal and interest. Schuhart argues that after the first penalty is calculated, this initial penalty merges with the initial delinquent payment to become the new delinquency upon which the next month's penalty is to be calculated.

From the language of the statute, one can see that its purpose is to deter property holders from defaulting on their obligations under assessment

bonds. It is undisputed that the first use of the words "such delinquency" refers to "the principal and interest so delinquent." Under the interpretation advanced by Schuhart, the penalties would merge with the delinquent principal and interest, and the words "such delinquency" would acquire a new meaning upon their second use in the statute. According to Schuhart, the second use of the words means delinquent principal and interest, plus previously imposed penalties.

We can find no basis upon which to attribute a new meaning to "such delinquency" the second time it is used in section 6442, and nothing in the statute suggests those words take on a different meaning the second time they are used. The statute scrupulously maintains a distinction between penalties and delinquent payments of principal and interest, directing the continued imposition of penalties until "such delinquent payment and all penalties thereon are fully paid," and directing the treasurer to collect "such penalties with and as a part of the delinquent payment."

■ " 'Such' is a relative adjective referring back to and identifying something previously spoken of. . . . [Citations.] In this respect it is equivalent to 'said,' 'aforesaid,' 'afore-described' and 'same,' as to all of which the same grammatical rule applies, i.e., in the absence of some controlling reason they refer to the last antecedent. [Citations.]" (*Estate of Wallace* (1950) 98 Cal.App.2d 285, 289-290 [219 P.2d 910].)

■ Though we believe the language of the statute and the bonds contains no expression of an intent to compound penalties and instead indicates the Legislature's intent to impose a 1 percent penalty on the amount of delinquent principal and/or interest each month,[5] the language admittedly is convoluted and, arguably, ambiguous. Our conclusion, however, that the Legislature did not intend the compounding of penalties is reinforced by the rules of statutory construction and the legislative history of the statute.

The most persuasive fact is the absurd consequence of the interpretation offered by Schuhart. As of March 31, 1989, the trial court had imposed over $350,000 in penalties on bonds with a total face value of $23,000 (on which approximately $20,000 in principal and $40,000 in interest is outstanding). Had Schuhart asked the city treasurer to sell assessment numbers 3 and 4 (§ 6500) instead of invoking his alternate remedy of foreclosure (§ 6610), the amount of penalties owed by the Pinguelos would have been just over $41,000 (as of Dec. 31, 1988) according to the declaration of the City

---

[5]Section 6508 expressly provides for the payment of interest, compounded semiannually, in order to redeem a bond following default and a demand for a treasurer's sale. (See also § 6504.) Section 6508 also directs the payment of penalties, but without any reference to compounding.

Manager of the City of Pleasanton, because the city finance department does not compound penalties on assessment bonds.

"The intention of the Legislature should not be presumed to include harsh or absurd results unless the language is so clear as to admit of no doubt. [Citations.]" (*Brown* v. *Huntington Beach etc. Sch. Dist.* (1971) 15 Cal.App.3d 640, 646 [93 Cal.Rptr. 417].)

Both the Pinguelos and Schuhart have provided this court with legislative materials showing the history of section 6442 and amendments thereto.[6] As Schuhart points out, there is a complete absence of any legislative history relating directly to the method of calculating penalties. With the exception of fluctuations in the penalty rate, the language of section 6442 has essentially remained the same over time (see original enactment, Stats. 1923, ch. 135, § 3, p. 278). Two significant points are apparent, however, from the legislative materials provided by the parties. First, the legislative committee reports prepared in connection with the 1980 amendment raising the penalty rate to 2 percent, refer to the increase in the penalty from "1% per month (12% per year) to 2% per month (24% per year)." (Sen. Com. on Local Government, Analysis of Assem. Bill No. 3179, as amended Apr. 29, 1980; see also Office of Planning and Research, enrolled bill rep., Assem. Bill No. 3179, as amended Apr. 29, 1980.) Though analysis by legislative and administration staff members is not entitled to great weight under the circumstances here, it does evidence an understanding that penalties are not compounded, but instead accrue at a simple rate of 1 percent per month (2% after amendment).

Second, it is doubtful that the Legislature intended penalties to be compounded if, as Schuhart suggests and as the legislative materials indicate, the Legislature raised the penalty rate to 2 percent in response to the belief that the 1 percent penalty was not a sufficient deterrent to defaults on assessment bonds. As this case demonstrates, heavy penalties would already be imposed if compounded, and an increase in the penalty rate to 2 percent would appear to have been unnecessary and exorbitant.[7]

---

[6] We take judicial notice of these materials pursuant to Evidence Code sections 452, subdivision (c) and 459.

[7] In an exhibit appended to his brief, Schuhart has offered a graph and supporting calculations that purport to show why a property holder would have an economic incentive to default on his or her bond payments if penalties were not compounded. Schuhart asks this court to take judicial notice of this exhibit as a fact or proposition not reasonably subject to dispute and capable of immediate and accurate determination by resort to sources of indisputable

Finally, as the Pinguelos point out, Schuhart has failed to cite a single statute or case that authorizes compounding of penalties. Penalties and forfeitures are not favored by the courts, and statutes imposing penalties or creating forfeitures must be strictly construed. (*Hale* v. *Morgan* (1978) 22 Cal.3d 388, 401, 405 [149 Cal.Rptr. 375, 584 P.2d 512]; *No Oil, Inc.* v. *Occidental Petroleum Corp.* (1975) 50 Cal.App.3d 8, 29 [123 Cal.Rptr. 589].)

The trial court's decision to compound the penalties on delinquent principal and interest must be reversed.

III., IV.*

. . . . . . . . . . . . . . . . . . . . . . . . . .

The judgment is reversed, and the matter is remanded for further proceedings in accordance with the views expressed in this opinion, including recalculation of the penalties and attorney's fees should Schuhart prevail in his action for foreclosure. The Pinguelos shall recover their costs on appeal.

Newsom, Acting P. J., and Stein, J., concurred.

Respondent's petition for review by the Supreme Court was denied September 5, 1991.

---

accuracy. (Evid. Code, § 452, subd. (h).) This exhibit is not a judicially noticeable matter as it would require an expert to explain the meaning of the exhibit, and the exhibit is subject to dispute and not readily capable of accurate determination.

*See footnote, *ante*, page 1599.