[No. B156080. Second Dist., Div. Eight. Mar. 21, 2003.]

RONALD D. GOODMAN et al., Plaintiffs and Appellants, v.
RICHARD D. WILLIAMS et al., Defendants and Respondents.

**COUNSEL**

Okazaki Law Offices and Brian K. Okazaki for Plaintiffs and Appellants.

Rosman & Germain and Daniel L. Germain for Defendant and Respondent Richard D. Williams.

Richard D. Williams, in pro. per., and for Defendant and Respondent Brenda K. Williams.

## OPINION

## BOLAND, J.—

### SUMMARY

This appeal raises an issue of statutory construction. Does the Improvement Act of 1911 allow the holder of a newly apportioned improvement bond to maintain a foreclosure action based on unpaid apportioned penalties that accrued under a predecessor bond, if the property owner has tendered the apportioned principal and the delinquent interest on the predecessor bond, but refuses to pay the penalties? We conclude the answer is "yes."

### FACTUAL AND PROCEDURAL BACKGROUND

We first describe the applicable statutory scheme, and then relate the circumstances in which its provisions are to be applied in this case.

1. *The statutory scheme.*

The Improvement Act of 1911, as set forth in the Streets and Highways Code, permits the formation of assessment districts for the purpose of constructing and maintaining public improvements. (Sts. & Hy. Code, § 5000 et seq.)[1] The legislative body of a city or county is authorized to charge the cost of the improvements to the district benefited by the improvements, and to assess the cost upon the real property within the district. (§§ 5180, 5821.) The legislative body may issue bonds to represent the assessment on each lot or parcel of land. (§§ 6400, 6422.) The bonds are sold to investors, and the city or county uses the bond proceeds to fund the improvements. The assessment is a lien upon the property affected, until such time as the bond issued to represent the assessment, accrued interest on the bond, and any penalties are fully paid.[2] (§ 6446.)

The code specifies the time for making payments to the city or county treasurer of the principal of each unpaid assessment, as well as the time for interest payments.[3] (§§ 6440, 6441.) If any installment of principal or interest on the unpaid assessment is late, the treasurer is required to add a penalty of 2 percent of the delinquent amount for each month until the delinquent payment and all penalties thereon are fully paid. (§ 6442.) If payment of

---

[1] All statutory references are to the Streets and Highways Code.

[2] Payments are made to the county or city treasurer, who maintains a fund designated by the name of the bonds, and bondholders are paid only from that fund. (§ 6424.)

[3] The number of annual payments corresponds to the number of serial payments to be made on the principal of the bonds issued to represent the unpaid assessment. (§ 6440.)

either principal or interest is not made to the bondholder when the bond coupons are due, the bondholder may demand that the treasurer advertise and sell the property (§ 6500 et seq.), or, as a "separate, distinct and cumulative remedy," the bondholder may file an action to foreclose the lien and recover the amount due. (§ 6610.)

Particularly noteworthy in this case are the code provisions authorizing the surrender of bonds and the issuance of new bonds when a lot or parcel of land encumbered by an assessment lien is divided into two or more separate lots or parcels. (§ 6480 et seq.) In the event of a division of property, an owner may request the street superintendent to apportion the amount remaining unpaid on the assessment in accordance with the division of the original parcel. When the apportionment is made, an application signed by all persons who own an interest in the original parcel, and by the holder of the existing bond, may be filed with the treasurer, requesting issuance of new bonds for the amounts shown by the apportioned assessment. (§§ 6481-6483.)

2. *The assessment, the bonds and the apportionment in this case.*

Ronald D. Goodman and John T. Doty, Jr. (collectively Goodman) were the holders of a bond representing the assessment on a 34-acre parcel of undeveloped land in Malibu, identified as tract 46754 (Bond No. 3A).[4] When Bond No. 3A was issued by Los Angeles County in 1989, the owner of the parcel was The Ark Building Corporation, of which Richard D. Williams was president. Ark Building subdivided tract 46754 into five separate lots in 1991, and thereafter conveyed its ownership to others. Lot 2 was conveyed to Williams and his then wife Brenda in early 1993. After the 1991 subdivision, no payments were made on Bond No. 3A, and the assessments became delinquent on December 1, 1991. Penalties began to accrue on January 2, 1992.

In April 1997, the owner of lot 1 filed an application seeking the division of Bond No. 3A and the issuance of new bonds to reflect the multiple ownership of tract 46754, which had been divided into six lots. Goodman consented to the issuance of the six new bonds requested. The application to which he consented described the six separate parcels, and identified the apportioned principal and new bond amounts, as well as the accrued penalties and delinquent interest, applicable to each parcel.

---

[4]Bond No. 3A was itself the result of an apportionment of the assessment represented by Bond No. 3, which was issued on February 1, 1987, with a maturity date of January 2, 1997, to fund public improvements in improvement district No. 2503.

The county recorded its amended assessments with the county recorder on August 13, 1998. The assessment recorded on Williams's lot shows a lien in total amount, up to August 31, 1998,[5] of $36,906.06, consisting of the new bond amount of $13,118.88 (apportioned principal plus bond cost of $10.00), delinquent interest of $4,722.81, and penalties of $19,064.37. The county issued new bonds representing the amended assessments on August 19, 1998. The bond representing the $13,118.88 assessment on Williams's lot 2 was Bond No. 3A3.

Several days earlier, on August 12, 1998, Williams wrote to the county treasurer expressly reserving "all rights with respect to the issue of penalties purportedly incurred and proposed for allocation to Lot 2." A week later, on the day the county issued the bonds, Williams tendered a check in the amount of $17,841.69 to the county treasurer, representing the principal of Bond No. 3A3 and the apportioned amount of delinquent interest that had accrued on its predecessor bond. On August 24, 1998, the agent for the bondholders wrote to the county treasurer, confirming Goodman's request to return Williams's check, "because it does not include penalties which the property owner has stated he does not intend to pay." No further payment or tender of payment was made.[6]

3. *This litigation.*

On December 28, 2000, Goodman filed this action against Richard Williams and his former wife Brenda Williams (collectively Williams) to foreclose the lien of Bond No. 3A3 under section 6610. The section allows "the holder of any bond upon which any payment either upon the principal or of the interest has become delinquent . . . [to] file and maintain an action to foreclose the lien of the bond and recover the amount due thereon."

On August 2, 2001, Williams filed a motion for summary judgment, arguing there was no right to foreclosure under Bond No. 3A3 on the basis of penalties that accrued under the predecessor bond. Williams contended section 6610 creates a right of foreclosure by the holder of a bond only when "any payment either upon the principal or of the interest has become

---

[5]The amended assessment notes that information on current assessment balances may be obtained at the Office of the Treasurer-Tax Collector of the County of Los Angeles.

[6]On September 16, 1998, the county issued its Statement of County Improvement Bond to Williams, showing a payment due on October 31, 1998 of $37,619.72, consisting of $13,118.88 in delinquent principal, $4,722.81 in delinquent interest, and penalties of $19,778.03. Bond No. 3A3 on its face stated the term of the bond was nine years from the second day of January next succeeding the next September 1st following its date (Aug. 19, 1998), and that an even annual proportion of the whole amount was due with accrued interest on January 2 of each year.

delinquent," and not for alleged penalties, and that no delinquency existed on the principal and interest on Bond No. 3A3 because he tendered those sums on August 19, 1998. Moreover, Williams contended, the statute authorizes only the apportionment of the principal of a bond, and does not permit the apportionment of accrued interest and penalties. The penalties that accrued under the predecessor bond were extinguished once the bondholder surrendered the old bond and accepted the new bonds.

The trial court initially denied Williams's motion, concluding that under the terms of section 6442, the penalty is added to the delinquent principal or interest "and therefore becomes a part of the principal or interest, as the case may be." The court stated that when a payment of either principal or interest, which may include penalties, becomes delinquent, section 6610 authorizes the bondholder to commence a foreclosure action. Goodman then filed a motion for summary judgment, asserting Williams had no viable defense to Goodman's complaint. Goodman asserted that installments of principal and interest due on bond No. 3A3 and its predecessor, Bond No. 3A, had been delinquent since December 1, 1991.[7] Williams again asserted that penalties which accrued under the predecessor bond did not give rise to any basis for foreclosure under the new bond.

The trial court denied Goodman's motion, and concluded its prior ruling denying Williams's motion was erroneous. The court vacated its earlier ruling and granted Williams's motion for summary judgment. The court explained its earlier ruling was based on the theory that penalties are added to delinquent principal or interest payments and therefore become a part of the principal or interest. The court concluded that the theory was mistaken based on *Schuhart v. Pinguelo* (1991) 230 Cal.App.3d 1599 [282 Cal.Rptr. 144], in which the court held that penalties under section 6442 may not be compounded. Since penalties may not be compounded, the trial court reasoned, they do not become a part of the principal or interest, and its earlier contrary conclusion was erroneous. Consequently, the court accepted Williams's argument that section 6610 does not permit a foreclosure action on

---

[7]Goodman also asserted that Williams was challenging the validity of the reassessment of tract 46754 that resulted in the issuance of Bond No. 3A3. Any such challenge, he contended, was barred by the statute of limitations in section 5660. Section 5660 provides that no action to question the validity of or to enjoin the collection of an assessment or reassessment may be maintained unless the action is commenced within 30 days after the recording of the assessment or reassessment; thereafter, "all persons shall be barred from any such action or any defense of invalidity of the assessment or of bonds issued thereon or of the reassessment if such is made and of bonds issued thereon." (§ 5660.) Goodman has not pursued this argument on appeal.

the basis of unpaid penalties.[8] Judgment was entered in favor of Williams on January 15, 2002, and this timely appeal followed.

## DISCUSSION

This case requires us to determine the application of the Improvement Act of 1911 where an assessment is apportioned at a time when payments on the bond representing the assessment are delinquent.[9] Williams contends the statute does not authorize apportionment of penalties and delinquent interest, or authorize foreclosure on the basis of penalties. Williams maintains Goodman should have collected the penalties by foreclosing under the predecessor bond. Goodman, on the other hand, contends nothing in the statute prohibits the apportionment of penalties. Moreover, Goodman argues section 6442 requires the county treasurer to add a penalty to delinquent payments of principal or interest, and to "collect such penalties with and as a part of the delinquent payment." (§ 6442.) Therefore, once penalties are added to delinquent principal or interest, the failure to pay those penalties along with the delinquent principal or interest permits foreclosure under the statute.

For the reasons below, we conclude Goodman is correct and the bondholders may maintain an action to foreclose the lien and recover the penalties.

1. *The statute authorizes apportionment of the entire amount unpaid on the assessment, including interest and penalties.*

First, we note the principles which guide our construction of the statute. "Under well-established rules of statutory construction, we must ascertain the intent of the drafters so as to effectuate the purpose of the law." (*Esberg v. Union Oil Co.* (2002) 28 Cal.4th 262, 268 [121 Cal.Rptr.2d 203, 47 P.3d 1069].) We are required to construe statutory language in

---

[8]The court then observed: "The statute does not say one way or the other [whether a foreclosure action on the basis of penalties is authorized], and the answer appears to hinge upon interpreting section 6442, the language of which 'admittedly is convoluted and, arguably, ambiguous.' [*Schuhart v. Pinguelo, supra,*] 230 Cal.App.3d at p. 1608."

[9]The remaining unpaid principal of the predecessor bond (more than $123,000) was delinquent when the new bonds representing the apportioned assessment were issued. The predecessor bond apparently matured on January 2, 1997. The statute's provisions on apportionment of assessments and issuance of new bonds plainly were not written in contemplation of a situation in which payments on the original bond are delinquent. The statute, for instance, appears to contemplate that a new bond would have the same maturity date as its predecessor: "The bond [referring to bonds representing apportioned assessments] shall be payable in installments at the respective dates of the payment of principal and interest on the existing bond, the number of such installments to be equal to the number of unpaid installments on the existing bond." (§ 6486.) In this case, by contrast, the maturity date of the predecessor bond had passed when the new bonds were issued.

context, considering the nature and purpose of the statutory enactment (*Nahrstedt v. Lakeside Village Condominium Assn.* (1994) 8 Cal.4th 361, 378-379 [33 Cal.Rptr.2d 63, 878 P.2d 1275]), and to harmonize its provisions to the extent possible. (*Woods v. Young* (1991) 53 Cal.3d 315, 323 [279 Cal.Rptr. 613, 807 P.2d 455].) "Interpretations that lead to absurd results or render words surplusage are to be avoided." (*Ibid.*)

The statutory provision authorizing apportionment of amounts unpaid on an assessment is section 6482. That section states: "Upon receipt of the application [for issuance of new bonds by the owner of any interest in any of the lots into which the original parcel has been divided] and fee the street superintendent shall apportion to each separate part of the original lot or parcel of land the proportionate part of the amount remaining unpaid on the assessment that would have been levied thereon had the lot or parcel of land been so divided at the time the original assessment was made . . . ."

Williams argues section 6482 provides for apportionment of the "amount remaining unpaid on the assessment," and the term "assessment" refers to bond principal only. The county therefore had no power to apportion the unpaid interest and penalties among the six lots. Under Williams's theory, none of the owners of subdivided property are required to pay any accrued penalties—or, for that matter, any unpaid interest—once an unpaid assessment is apportioned among multiple lots and new bonds are issued to reflect the apportionment.[10]

We do not agree with Williams's construction of section 6482. First, section 6482 provides for apportionment of "the amount remaining unpaid on the assessment." It does not use the term "unpaid assessment," or even "unpaid portion of the assessment." While section 6482 does not expressly mention interest and penalties on the unpaid assessment, neither does it expressly mention the principal of the unpaid assessment. The statute refers only to the "amount remaining unpaid on the assessment." While these words arguably may be ambiguous, the language necessarily encompasses any "amount remaining unpaid on the assessment," including interest on the assessment and penalties on the assessment. In short, nothing in the language of section 6482 excludes the apportionment of interest and penalties on the unpaid assessment.[11]

Moreover, to construe the language of section 6482 in any other way defies common sense. No bondholder in this situation would agree to an

---

[10]Williams's interpretation of the statute requires him to argue that the interest due under a predecessor bond, like penalties, may not be apportioned. Williams nonetheless tendered payment of his apportioned share of the interest, "so as to bring the matter to a close."

[11]The apportionment of interest and penalties along with principal requires no discretion on the part of the street superintendent. When the principal of the unpaid assessment is

owner's request for the issuance of apportioned bonds if interest and penalties evaporated upon issuance. Instead, the bondholder would be forced to foreclose on one or more lots into which the original parcel was divided, each of which is presumably encumbered by the entire assessment until an apportionment occurs. Such a result furthers neither the statutory scheme nor the interests of the property owners. (See *California Mfrs. Assn. v. Public Utilities Com.* (1979) 24 Cal.3d 836, 844 [157 Cal.Rptr. 676, 598 P.2d 836] ["[w]here a statute is theoretically capable of more than one construction we choose that which most comports with the intent of the Legislature"; constructions which "defy common sense, or lead to mischief or absurdity, are to be avoided"].) In addition, a construction allowing the elimination of interest and penalties from "the amount remaining unpaid on the assessment" at the time of apportionment would conflict with other provisions of the statute.[12]

Accordingly, we conclude the statute authorizes apportionment of the entire amount unpaid on the assessment, including interest and penalties.

2. *The bondholder's foreclosure remedy remains intact when a property owner fails to pay penalties along with the principal and interest.*

Williams contends that once predecessor Bond No. 3A was surrendered and new Bond No. 3A3 was issued, "there no longer existed any right of foreclosure on the basis of penalties that had accrued under the predecessor bond." Williams argues that section 6610 of the code, authorizing the bondholder to file an action to foreclose the lien of the bond and "recover the amount due thereon," authorizes foreclosure only when a payment of principal or interest becomes delinquent. Since Williams tendered payment of principal and interest under the new bond on the day of issuance, no delinquency of principal or interest existed under the new bond. Therefore, foreclosure is not permitted. Again, we disagree.

Section 6610 provides that "the holder of any bond upon which any payment either upon the principal or of the interest has become delinquent may . . . file and maintain an action to foreclose the lien of the bond and

---

apportioned to each separate part of the original lot, the same mathematical proportion produces the allocated share of delinquent interest and outstanding penalties.

[12]Williams makes much of the fact that the assessment corresponds to bond principal, that the new bond must be in the same form as the predecessor bond, and that the statutory bond form has no provision for "a carryforward of penalties or interest that accrued under a predecessor bond." While the point is correct, it holds no particular relevance. As noted *post,* the bond is a contract between the bondholder and the county, and merely represents the assessment. Nothing in the bond purports to eliminate the property owner's statutory responsibility for payment of the assessment represented by the bond "and the accrued interest thereon and the penalties, if any . . . ." (See § 6446.)

recover the amount due thereon."[13] Since the face of the new bond shows no delinquency of principal or interest, these words, standing alone, arguably suggest no foreclosure action may be maintained. However, section 6610 cannot be read in a vacuum. ▮ The words instead must be construed in context; "statutes must be harmonized, both internally and with each other, to the extent possible." (*California Mfrs. Assn. v. Public Utilities Com., supra,* 24 Cal.3d at p. 844.) ▮ Accordingly, section 6610 must be construed to authorize a foreclosure action when a property owner fails to pay penalties as well as principal and interest. Any other construction would require us to ignore other provisions of the statute, and would produce absurd and unintended results. Properties benefited by improvements could evade payment of statutorily required penalties for failure timely to pay for those improvements.[14] Alternatively, in order to collect penalties to which they are statutorily entitled, bondholders who fund improvements would have to refuse to allow apportionment of unpaid amounts when property is subdivided. Neither alternative is consonant with the remainder of the statute. The following points are illustrative:

— First, no provision of the statute states, or even suggests, that interest, or penalties for failure to pay principal or interest, are extinguished when new bonds are issued. Indeed, as we have held *ante*, the street superintendent is authorized to apportion the entire amount unpaid on an assessment, including interest and penalties, in accordance with the division of the property. Accordingly, no support is found in the statute for the proposition that penalties are extinguished or eliminated when one bond is replaced with another.

— Second, bonds merely represent an unpaid assessment on property. (See § 6446.) The assessment itself constitutes the lien on the property and is security for payment of the bonds. The lien exists whether or not bonds are issued to represent it. (See § 5373.) The lien continues until the bond, interest and penalties are fully paid. Section 6446 states: "The assessment shall be a lien on the property affected thereby . . . until the bond issued to

---

[13]Section 6610 states: "As a separate, distinct and cumulative remedy, the holder of any bond upon which any payment either upon the principal or of the interest has become delinquent may . . . at any time after four months next succeeding the fourth Monday of September, following the date of delinquency of principal or interest and prior to the expiration of four years after the due date of the last installment upon any bond or of the last principal coupon attached thereto, file and maintain an action to foreclose the lien of the bond and recover the amount due thereon."

[14]If the statute is construed to prohibit foreclosure on the basis of penalties, the penalty provisions of the statute would be rendered unenforceable as a practical matter. A property owner could be delinquent in making principal and interest payments, resulting in penalties, but so long as payment of principal and interest is made before the bondholder files a foreclosure action, the bondholder would be unable to collect the unpaid penalties.

represent the assessment . . . and the accrued interest thereon and the penalties, if any, shall be fully paid according to the terms thereof . . . ."[15] In this case, neither the predecessor bond issued to represent the assessment nor interest and penalties were paid. While Williams tendered the principal of the apportioned bond and interest on the predecessor bond, the assessment lien on his property nevertheless continues until the time when both amounts "and the penalties, if any" are "fully paid." The statute contains no provision suggesting the lien may be removed without payment of penalties.

—— Third, section 6447 of the statute similarly demonstrates that property is not discharged from the lien of an assessment until "all penalties accrued and unpaid" in fact are paid to the county treasurer. Section 6447 specifies the conditions under which a property owner may pay off a bond and discharge the land described in it from the lien of the assessment. Discharge may occur by paying the county treasurer (1) the unpaid principal sum of the bond, (2) unpaid interest to the next succeeding January 2 or July 2, and (3) "all penalties accrued and unpaid . . . ." Nothing in the words of section 6447 excludes from its scope either interest or penalties accrued under a predecessor bond.[16]

—— Finally, section 6442 requires the county treasurer to add penalties to delinquent payments of principal or interest, until the delinquent payment and all penalties are fully paid. Section 6442 states: "If any installment of the principal of the unpaid assessment or of interest thereon is not paid to the treasurer on or before the due date of June 1st or December 1st, as the case may be, next preceding the date upon which the coupons representing it are

---

[15]Section 6446 states in full: "The assessment shall be a lien upon the property affected thereby, with priority as fixed in Section 5373, until the bond issued to represent the assessment and which it is hereby declared does represent the assessment, and the accrued interest thereon and the penalties, if any, shall be fully paid according to the terms thereof, but which lien shall in no event continue beyond four years after the date of the last principal coupon attached thereto, and for the purposes of Section 330 of the Code of Civil Procedure and Section 2911 of the Civil Code said date shall be deemed the 'due date' of the last principal coupon attached to said bonds."

[16]Section 6447 states: "The owner of or any person interested in any lot or parcel of land upon which a bond has been issued under the terms of this division may at any time before commencement of proceedings for sale pay off the bond and discharge the land described in the bond from the lien of the assessment. The discharge may be had by paying to the treasurer, for the holder of the bond, the following sums: (a) the unpaid principal sum thereof; (b) if the interest thereon has already been paid to the next succeeding January 2 or July 2, as the case may be, no interest will be payable; (c) if the interest to the next succeeding January 2 or July 2 has not been paid, then the interest to that January 2 or July 2 . . . shall be payable; (d) all penalties accrued and unpaid; . . . . For the purpose of this section, a bond shall be deemed to be issued on the 31st day after the recordation of the warrant upon any unpaid assessment for which the legislative body has provided for the issuance of a bond to represent said unpaid assessment or the last date for payment of the assessment, . . . whichever may be later."

payable to the bondholder, the treasurer shall . . . add to the principal or interest so delinquent a penalty of 2 percent of the total amount of such delinquency, and at the beginning of the business on the first day of each succeeding month until such delinquent payment and all penalties thereon are fully paid, he shall add an additional penalty of 2 percent of the amount of such delinquency. The treasurer shall collect such penalties with and as a part of the delinquent payment. Except as hereinafter provided, the 2-percent penalty first imposed and all subsequent penalties shall be paid to the holder of the bond along with and as a part of such defaulted payment."[17] Again, nothing in section 6442 authorizes the county treasurer to extinguish penalties or interest when new bonds are issued to reflect an apportioned assessment. Section 6442 illustrates that the property owner's obligation is to pay to the county treasurer the principal of, and interest and any penalties on, the unpaid assessment. In short, the claim that the issuance of a new bond by the county to the bondholder extinguishes statutory obligations of property owners that have accrued under an assessment represented by a predecessor bond finds no basis in the statute.[18]

Accordingly, we conclude that under section 6610, "the holder of any bond upon which any payment either upon the principal or of the interest has become delinquent" includes the holder of a new bond issued to replace the surrendered bond. The delinquency associated with the predecessor bond attaches to the successor bond, which merely represents the unpaid assessment.[19] (§§ 6446, 6447.) That assessment is a lien on the property until the bond issued to represent it, "and the accrued interest thereon and the

---

[17]The legislative body may elect to have the county treasurer retain the first 2 percent penalty as a cost of servicing the delinquency, in which case a statement so providing is to be included in the default clause in the bond. (§ 6442.)

[18]Again, the bonds merely represent the assessment, and are the means by which the county funds the improvements; the bonds are issued by the county to the bondholder, and confer contractual rights on the bondholder. (See *Call v. Feher* (1979) 93 Cal.App.3d 434, 445 [155 Cal.Rptr. 387] ["[t]he levying of an assessment and issuance of bonds are made with or without the agreement of the landowner. Land is assessed not because of an agreement but because of the lien-levy procedure under the applicable law. The only true contract is the bond between the issuing entity and the bondholder to which the landholder is not a part[y]."]) Nothing in Goodman's surrender of the predecessor bond and acceptance of apportioned bonds—pursuant to an application for division of the bond that specifically included an apportionment of delinquent interest and penalties—operated by contract or statute to eliminate the obligations that accrued in connection with the predecessor bond.

[19]Williams argues that the trial court correctly relied on *Schuhart v. Pinguelo, supra*, 230 Cal.App.3d 1599, in ruling that section 6610 does not permit foreclosure based on unpaid penalties. In *Schuhart*, the court construed section 6442 and concluded the Legislature did not intend to compound penalties, but intended only to impose a penalty on the amount of delinquent principal and/or interest each month. (*Schuhart*, at p. 1608.) With this conclusion there is no dispute. The trial court, however, interpreted *Schuhart* to mean that, since penalties may not be compounded and therefore do not "become a part of the principal or interest," foreclosure on the basis of unpaid penalties was improper. *Schuhart* did not purport to address

penalties, if any," are fully paid. (§ 6446.) Once the county treasurer adds penalties to delinquent principal or interest, as statutorily required, the apportionment of an assessment and issuance of new bonds does not extinguish the penalties that were "add[ed] to the principal or interest so delinquent" (§ 6442) and therefore became a part of the assessment lien. The property owner's refusal to pay those penalties allows the bondholder to file an action to foreclose the lien.[20]

In this case, Williams did not pay, or tender, "all penalties accrued and unpaid" with respect to the land described in the bond representing the assessment on his property. Consequently, his property has not been discharged from that lien, and Goodman has the right to file and maintain an action to foreclose the lien represented by his bond.

### DISPOSITION

The judgment is reversed and the cause is remanded to the trial court with directions to enter summary judgment in favor of appellants Goodman and Doty, and to issue other orders consistent with that ruling. Goodman and Doty are to recover their costs on appeal.

Cooper, P. J., and Rubin, J., concurred.

Respondents' petition for review by the Supreme Court was denied June 18, 2003.

---

that question. Certainly penalties do not "become a part of the principal or interest" for purposes of calculating future penalties on delinquent payments; however, penalties clearly must be "add[ed] to the principal or interest so delinquent . . . until such delinquent payment and all penalties thereon are fully paid . . . ." (§ 6442.) Nothing in our decision here conflicts with the principle delineated in *Schuhart*.

[20]We recognize this conclusion means that, when a delinquent assessment is apportioned and new bonds are issued, the bondholder could immediately foreclose against a property owner who does not pay an apportioned share of accrued penalties under the predecessor bond. However, this presents no unfairness to the property owners; their properties were encumbered by the lien of the predecessor bond and already subject to foreclosure.